## Case No. 2,880.

### The CLEMENT.

[1 Spr. 257;[1] 17 Law Rep. 444; 31 Hunt, Mer. Mag. 712.]

District Court, D. Massachusetts. Oct., 1854.[2]

NAVIGATION—SAILING VESSELS—CONVERGING COURSES.

1. A vessel off the wind, must give way to one close-hauled.

[Cited in The Commodore Jones, 25 Fed. 508.]

2. Where a square-rigged vessel and schooner, both close-hauled, are sailing upon convergent courses, on the same tack, and the convergence is caused by the ability of the schooner to lie nearest to the wind, the latter must give way.

[Cited in Whitridge v. Dill, 23 How. (64 U. S.) 455; The Commodore Jones, 25 Fed. 508.]

In admiralty. This was a cause of collision, promoted by Matthew Hunt and another, owners of the pilot boat Hornet, of Boston, against the brig Clement [Paul Mayo, claimant], for running down and sinking the Hornet, in Boston harbor, in June, 1854. The libel alleged, that the two vessels were coming into the harbor, by the wind, (which was W. N. W.,) the schooner being a half a mile to leeward of the brig, and both vessels on the starboard track, bound for Broad sound; that when nearly up to the north-east ledge of the "Graves," the brig suddenly kept off three or four points towards Lighthouse channel, and ran afoul of the Hornet, and sank her. The answer of the respondent denied this statement, and alleged that the brig was sailing towards Lighthouse channel, by the Graves, two points free, and about S. S. W., while the Hornet was close-hauled; that the Hornet persisted in trying to run across the bows of the brig, although hailed

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]
[2] [Affirmed by circuit court in Case No. 2,-879.]

and told to keep off, and thereby caused the collision. The answer further alleged, that the brig was so near to the Graves, that she had no room to luff, or tack; but that the Hornet had plenty both of room and time, to have avoided the other vessel, by keeping off.

Charles P. Curtis, Jr., for libellants.
F. C. Loring, for respondents.

SPRAGUE, District Judge. The collision between these two vessels took place in Boston harbor, about noon, on a fine summer day, when there was a good breeze, and the sea smooth. It is, therefore, a necessary inference, that it must have been caused by the fault of one or both of them. The alleged change in the course of the brig, I do not think is made out by the evidence. But the libel, taken in connection with the answer, presents a case of two vessels sailing on converging courses, both on the same tack, the one close-hauled, and the other two points free. Then the question is, which is to give way? There is some discrepancy in the testimony, as to where this collision took place, and whether it was practicable for the brig to have done otherwise than keep her course; but from the respondent's witnesses, taken in connection with those of the libellant, I infer that it must have been outside of the buoy, which is on the north-east ledge of the Graves. The captain of the brig says he was then eastward of "the buoy;" and it is shown that there is but one buoy near the Graves, and that, half a mile from the Graves proper.

The respondent says, that the Hornet was trying to run across the brig's bows. That is true; but it is equally true that the brig was trying to run across the schooner's bows; and it is to prevent collision in similar cases, that a rule of the sea has been established. The present case appears to be one to which the rule applies, viz., that when two vessels are approaching on convergent courses, one close-hauled, and the other free, and there is danger of collision, the vessel having the wind free must give way. If the brig had been close-hauled, and the Hornet close-hauled also, and the convergence of their courses had been owing to the schooner's ability to lie nearer to the wind than the other, then the brig would not have been bound to give way; for the reason that the schooner would have been in a condition, in which she would have had an advantage over the square-rigged vessel, and she might have altered her course, and still been on equal terms with the other. But, in this case, the brig was not close-hauled; she was two points free, and it was therefore incumbent on her to give way. It is in evidence, that the captain of the brig saw the Hornet half an hour before the collision; and he had it in his power either to keep off [at once in front of the schooner, or he might subsequently have gone under her stern],[3] or

haul his wind [and either backed his topsail or gone about],[4] and afterwards to regain the line on which he was previously sailing. In fact, the brig luffed and wore round after the accident, and it is therefore justly inferrible, that there was room enough for her to have done so before. As she was heading toward Lighthouse channel, and was up to windward, she might have adopted either of the above measures, without any more detention than would be caused by a short deviation, while the schooner being as close to the wind as she could go, heading for a narrow passage near the Graves, any deviation by her would have been [a detention and][5] a loss of ground to leeward. It was therefore incumbent upon the brig to adopt some one of these measures, and so avoid the schooner.

Another fact tends to show negligence on the part of the brig. It appears that the captain saw the schooner half an hour before the collision, and that although he saw that the two vessels were upon converging courses, he says he paid no attention to her, from that time, till the collision was imminent. This was negligence on the part of the brig. Every vessel is bound to keep watch of all vessels in her vicinity. and to observe their motions and courses. In addition to this, the man at the wheel of the brig testified that he heard the hail from the schooner, before the collision, but took no measures to alter the course he was steering; and he gave, as his reason for not doing so, that he had no order from the captain to that effect, and would not do so till he had. This cannot be justified; having it in his power to avoid the collision when it was imminent, it was his duty to do so immediately, without waiting for orders from the captain, when life and property were hazarded by his delay. For these reasons, I think the brig was to blame.

The question then arises: Was the Hornet in fault also; because she did not keep away, when hailed from the brig? I do not think she was. If she were to be adjudged in fault, because she persevered in holding her course, then the rule requiring a vessel with the wind free to give way to one close-hauled, would be practically abrogated. The rule authorizes and requires the vessel by the wind to hold her course, under the confident belief that the other will give way. [It is not for the brig to complain that the Hornet held her course, when she herself was already off the wind, and could have kept off a little more with difficulty.][5] I think the brig was alone to blame in this collision, and therefore a decree must be entered for the libellants, with costs, and an assessor appointed, to ascertain the damages, unless the parties can agree on the amount thereof.

This case was affirmed, upon appeal to the circuit court. [Case No. 2,879.] Upon appeal to the supreme court, the judges were equally divided. [Case not reported.]

---

[3] [From 17 Law Rep. 444.]

[4] [From 31 Hunt. Mer. Mag. 712.]
[5] [From 17 Law Rep. 444.]