## THE COMMODORE JONES.[1]

### CLAUSEN v. THE COMMODORE JONES.

*(District Court, S. D. New York. October 30, 1885.)*

1. COLLISION—SAILING VESSELS—RULE 17—DEFECTIVE LOOKOUT.
   A sloop and a lighter were sailing on the same tack, on courses varying by only one and one-half points; the sloop being the leeward vessel, and overtaking the lighter. As the sloop drew up to the lighter a tow lay directly across her course, whereupon the sloop luffed, and while in stays was struck by the lighter, which had not altered her wheel till too late. *Held,* (1) that the sloop was not obliged to fall off and back so as to pass astern of the tow; (2) that the lighter, being to windward, was bound to keep watch of the vessels to leeward and tack in time to keep out of the way of a necessary tack by the leeward vessel; (3) that the sloop had the right to rely on the lighter's observing this duty; (4) that the primary fault which brought about the collision was in the lighter's keeping no watch of the sloop.

2. SAME—CONFLICT BETWEEN RULES 17 AND 22—OVERTAKING AND CROSSING COURSES.
   Consideration of cases where one vessel is overhauling another and yet sailing on a crossing course; and sailing rules 17 and 22 are in conflict.

In Admiralty.

*Edwin G. Davis,* for libelant.

*Benedict, Taft & Benedict,* for claimants.

BROWN, J. The libel in this case was filed to recover the damages sustained by the libelant's lighter Billow through a collision with the sloop Commodore Jones, in the East river, off Gold street, Brooklyn, between 9 and 10 o'clock in the morning of October 22, 1883. The

---

[1] Reported by R. D. & Edward G. Benedict, Esqs., of the New York bar.

tide was strong flood, the wind directly ahead, and both vessels were beating up river and close-hauled, until within a short time of the collision. The lighter had no boom to her sail, her peak was down, and she could not keep close to the wind. The sloop was sailing from one to two points nearer the wind, and, sailing faster also, had been gradually overtaking the lighter. When near the Brooklyn shore, they both tacked at about the same time; the lighter off Gold street, and the sloop about one block below. Very near the middle of the river a tug was going up stream, with two schooners lashed on each side of her, the one on the outer starboard side being a three-masted schooner about 200 feet long. The course of the sloop lay a little ahead of and crossing the bows of the schooner; but as she neared the schooner it was found that she was unable to go ahead of her upon her starboard tack, and the sloop thereupon undertook to come about upon a short tack for the Brooklyn shore. At the same time, or a little before, her captain hailed the captain of the lighter to go about, and to run down his jib for that purpose. The lighter not being handled quickly enough to accomplish this, the sloop did not come about, but remained in stays, running along parallel with the schooner, and only a few feet away from her, until the lighter's bows struck the sloop on the starboard side, just forward of her rigging, at nearly right angles, causing some damage to both. The bows of the sloop were knocked by the blow over against the schooner, striking her, as the claimant's testimony shows, by the fore chains, and doing her also some damage there.

From the foregoing statement it appears that the courses of the lighter and the sloop were crossing courses, and by an angle, as the testimony shows, of about one and one-half points, and that the sloop was also in the situation of an overtaking vessel. The sloop, at the time she came about, or wished to come about, just before the collision, was a little distance ahead of the lighter to the westward,—that is, ahead upon her own course,—but the lighter was a little ahead to windward, and both were close-hauled and upon the same tack. Literally, rules 17 and 22 both include this case, but in contrary senses. By the former rule, the lighter, being to windward, would be bound to keep out of the way of the sloop to leeward; by the latter rule, the sloop, as an overtaking vessel, would be bound to keep out of the way of the lighter. But by the twenty-third rule, where the one was bound to keep out of the way, the other was bound to keep her course. All these rules, however, are subject to rule 24. In the case of *The Cayuga*, 14 Wall. 270, where two steamers were sailing upon crossing courses at a difference of an angle of three points, the slower steamer, being ahead, had the other upon her starboard hand, and by rule 19 was therefore required to keep out of the way of the other; while the latter, if rule 22 was applicable, would be the one that was bound to keep out of the way. The court held the former rule to prevail, and say, (page 275:)

"Every vessel overtaking another vessel, it is said, shall keep out of the way of the vessel ahead; but that rule cannot properly be applied in this case, as the two steamers were crossing, or running on intersecting lines, in which case the question is not, in general, affected by the comparative speed of the two vessels, nor by the fact that the one or the other was slightly ahead when the necessity for precaution commenced. Undoubtedly, where two ships are running in the same direction, the ship astern, if she is sailing faster than the ship ahead, is, in general, bound to adopt the necessary precautions to avoid a collision; but it is clear that the rule does not, in general, apply in a case where the ships are crossing, or are distant from each other on a right line, and are running on intersecting lines."

It is important to notice, however, that the court find "that at the time when necessity for precaution commenced the two steamers were nearly abreast." Page 277.

There are three cases in which a similar conflict arises between rule 22 and rule 19 in regard to sailing vessels. Thus if A. is coming up astern and on the starboard quarter of B., both having the wind on their port side, and the course of A. is crossing that of B. ahead of her, at an angle of say one or two points, these crossing courses involve risk of collision, and A. is also overtaking B. By rule 22, A., as an overtaking vessel, must avoid B., and the latter keep her course. But rule 17 says: "If they have the wind on the same side, * * * the vessel which is to the windward shall keep out of the way of the vessel which is to leeward." In this situation both vessels may (1) have the wind two or three points free; or (2) both may be close-hauled; or (3) B. may have the wind free, and A. be close-hauled. Rule 17 makes no distinction in these cases. In all three B. would be the windward vessel, and under rule 17 would be bound to keep out of the way; while A. is equally an overtaking vessel, and if rule 22 applied, A. must keep out of the way of B. Situation 3 arose in the case of *The Clement*, 1 Spr. 257, where it was held that the slower vessel to windward, having the wind two or three points free, was bound to keep out of the way of the overtaking vessel close-hauled. But SPRAGUE, J., says specifically that if both were close-hauled, the overtaking vessel would have been bound to give way. The case was affirmed in the circuit by CURTIS, J., (2 Curt. 363,) and on appeal the supreme court were equally divided. 1 Pars. Shipp. & Adm. 568, note 41. This was, however, before the statutory rules. In the case of *Simpson* v. *Spreckels*, 13 Fed. Rep. 93, the vessels were drifting, rather than sailing, and had not steerage-way; and in *The Peter Ritter*, 14 Fed. Rep. 173, the situation was peculiar, in that the vessel ahead "could not luff," while the overtaking vessel had nothing to prevent her keeping off. In the present case both those conditions are reversed.

I have not found any other decisions in this country under the rules of navigation contained in the Revised Statutes as to which rule is to prevail in the cases stated. In *The Peckforton Castle*, 3 Prob. Div. 11, the situation was similar to that of *The Cayuga*, and the vessels

were treated as crossing, and not overtaking. By article 20 of the new international rules, which were adopted by the United States, March 3, 1885, *c.* 354, an overtaking vessel is in all cases required to keep out of the way of the vessel overtaken, notwithstanding the prior articles. This provision has been recently held in the case of *The Seaton,* 9 Prob. Div. 2, to remove the ambiguity of the former rules on this point. Articles 14 and 20 of the new rules are in accordance with the rules laid down by Judge SPRAGUE in the case of *The Clement* previous to the present statutory regulations. See *The Governor,* Abb. Adm. 108; *The Rhode Island,* Olcott, 505, 515; *Whitridge* v. *Dill,* 23 How. 448, 452; *The City of Merida,* 24 Fed. Rep. 229.

I do not find it necessary to pass upon the application of the existing rules 17 and 20 to this case. Rule 24 makes all the preceding rules give way to any special circumstances rendering a departure from the general rules necessary. The presence of the tug and tow in mid-river, some 200 feet long, preventing the sloop from going further on that tack, was such a circumstance, it seems to me, as to control the obligations of both the sloop and the lighter. When the sloop began to come about, the lighter, if any lookout or watch had been kept upon the sloop, might have come about at the same time, and avoided this collision. If the sloop had a right to tack at the time she did, clearly the lighter was in fault for not coming about at the same time. I do not credit the statement of the latter's witnesses that she had not sufficient steerage-way, or sufficient room to come about. The fact that, though tacking near the Brooklyn shore, and at the same time with the sloop, she had got well out into the river, and was going at the rate of two or three knots, shows sufficient speed and means of coming about. She had no difficulty in tacking in shore, and there was no more difficulty out in the river. Her lookout, as the evidence shows, was otherwise employed, and not attending to the sloop; and the captain's view was so obscured by barrels that he could not see properly what was going on.

The claimant's evidence shows further that the sloop, at the time she started to come about, was on a line with the bows of the schooner; but that while in stays the tug drew ahead a little, so that at the time of the collision the sloop's bows were knocked against the schooner's fore chains. The pilot of the sloop, which was 80 feet long, would therefore be at that moment a little aft of amidship of the schooner, or towards her starboard quarter. As the tug and tow, moreover, were going up stream at about the same rate with the sloop, it is clear that when the sloop tacked on the Brooklyn shore she was about off their beam, and hence that the tug and schooners were all the time in the way of the sloop's running out her course. The sloop found she could not pass them ahead; and I know of no rule which required her to drop 200 feet astern in order to pass to the westward rather than to make another short tack in the way she did.

Practically, the tow was in the situation of an obstacle to further navigation on that tack; and the sloop had therefore the same right to tack on meeting this obstacle to her course that she would have had if this obstacle had been either the western shore or a shoal in mid-river, instead of a tow. The lighter was bound to keep watch of the vessels to leeward, and to tack in time to keep out of the way of a necessary tack by the leeward vessel. The sloop had the right to rely on the lighter's observing this duty. Had the sloop voluntarily come up under the quarter of the schooner, instead of passing astern without much deviation from her own course, a different question would be presented. I am satisfied from the evidence on this trial that that was not the fact in this case; and that, as her witnesses state, she could not have gone astern of the tow except by falling off from her course sometime previous and going far out of her way. This was not required of her. But not being able to pass ahead of the tow, she was practically in the situation of a vessel that had run out her tack, and had the right, therefore, to have the lighter, as the windward vessel, keep out of her way on tacking.

The testimony on the part of the lighter is very inconsistent, and so untrustworthy that little can be made out of it as to the lighter's position. The captain says he starboarded to go astern of the tow, some 10 or 12 minutes before the collision; but says it was about five or six fathoms from the schooners. The deck hand says it was when 600 to 800 feet off from her. If they turned when 600 or 800 feet distant, it must have been very soon after tacking, as the river is there only 1,600 feet wide; and in that case the lighter had the wind free for a considerable space before reaching the sloop's course. In that situation, beyond controversy, the lighter would be bound to keep out of the way of the sloop, which was close-hauled. But I do not credit that estimate of the distance. The captain's testimony is wholly unreliable on that point, because so inconsistent. But it seems probable that he did starboard some little time before the collision, and then had the wind free, and hence was bound to keep out of the way of the sloop.

The primary fault that brought about the collision was, I think, in the lighter's keeping no watch of the sloop. Had the latter's course been observed, the captain of the lighter would not have committed the gross error of changing his course to port, so as to cross, with a free wind, the course of the sloop. That fact puts him in clear fault, by the undoubted statutory rule, (17;) and the fact that he struck the sloop nearly at right angles, when close to the schooner, and sent her bows into the latter's fore chains, is clear evidence, to my mind, of gross inattention and bad handling on the lighter's part. Upon the evidence before me, I think the sloop was not bound to go so far out of her way as to run astern of the tow; nor do I perceive any fault in the handling of the sloop. The libel must therefore be dismissed.