GEORGE ALDRIDGE AND PATRICK W. CARLIN, APPELLANTS, v. JOHN F. CLAUSEN, RESPONDENT.

*Rules for navigation of vessels — when a vessel is to be considered as an "overtaking" and not a "crossing" vessel, within the meaning of Navigation Rules 17, 22, 23 and 24.*

This action was brought to recover damages sustained by the plaintiffs' sloop by a collision with the defendant's lighter in the East river. Both vessels were beating up the river with the wind dead ahead, and at the time of the collision both were on the starboard tack, the lighter being to the windward. The sloop entered the East river after the lighter, and sailed faster than the lighter and closer to the wind. The captain of the sloop finding that she could not cross ahead or at the stern of a tug and her tow, which were also going up the river, caused her helm to be put down and signaled to the lighter to go about, which it attempted to do, but did not succeed in accomplishing in time to avoid a collision with the sloop. There was nothing in the evidence fixing, with even approximate accuracy, the difference in the courses of the vessels.

*Held*, that even if it were assumed that there was a difference of three points between the courses of the vessels, the sloop was to be considered as an overtaking vessel, and not as a crossing vessel, within the meaning of these terms as used in the navigation rules, and was bound to keep out of the way of the lighter. (DYKMAN, J., dissenting.)

*The Clement* (1 Sprague, 257); *The Cayuga* (14 Wall., 270); *The Peckforton Castle* (2 Prob. Div., 222) distinguished.

APPEAL from a judgment dismissing the complaint, entered in Dutchess county upon the trial of this action by the court without a jury.

The suit is for damages caused by a collision in the East river, which occurred in October, 1883, between the plaintiffs' sloop

and the defendant's lighter. Both vessels were beating up the East river, with the wind nearly dead ahead, and with a flood tide. The sloop was the faster vessel. Both tacked on the Brooklyn shore, the lighter about abreast of Gold street and the sloop about abreast of Pearl street. The lighter could not lie so close to the wind as the sloop did, and, moreover, after the lighter was headed off from Brooklyn she starboarded her helm to get under the stern of a tug with four schooners in tow, two on each side, which was also going up the river. The sloop kept her course without change until she also approached the tug and tow, when, finding that she could not cross ahead of them by keeping on, and that she could not get under their sterns by keeping off, her helm was put down and she came up into the wind and lay in stays. The lighter, which was approaching the sloop's starboard side, was hailed to go about, and after a period she attempted to do so, but not in season to avoid the sloop.

The rules for avoiding collisions, passed by congress (U. S. Rev. Stat., § 4233), furnish the law by which these two vessels were to be guided in their navigation, and according to which the rights of the parties must be determined. The plaintiffs claimed that the rules applicable are the seventeenth, twenty-third and twenty-fourth, which are as follows:

Rule 17. When two sail vessels are crossing so as to involve risk of collision, then, if they have the wind on different sides, the vessel with the wind on the port side shall keep out of the way of the vessel with the wind on the starboard side, except in the case in which the vessel with the wind on the port side is close hauled and the other vessel free, in which case the latter vessel shall keep out of the way. But if they have the wind on the same side, or if one of them has the wind aft, the vessel which is to windward shall keep out of the way of the vessel which is to leeward.

Rule 23. Where, by Rules 17, 19, 20 and 22, one of two vessels shall keep out of the way, the other shall keep her course, subject to the qualifications of Rule 24.

Rule 24. In construing and obeying these rules, due regard must be had to all dangers of navigation, and to any special circumstances which may exist in any particular case, rendering a departure from them necessary in order to avoid immediate danger.

The defendant claimed that the rule applicable is the twenty-second rule, which is as follows: "Every vessel overtaking any other vessel shall keep out of the way of the last mentioned vessel." The judge below sustained this contention, and held that the sloop was an overtaking vessel, and that she was bound to keep out of the way of the lighter, and that, having failed to do so, she contributed to the collision.

*H. H. Hustis* and *R. D. Benedict*, for the appellants.

*Edwin G. Davis*, for the respondent.

CULLEN, J.:

This appeal is from a judgment dismissing the complaint on a trial before a justice of this court, without a jury. It is doubtful whether the exceptions of the plaintiffs are sufficient to raise any question on this appeal, because the trial justice was not requested to find any facts on which a recovery by the plaintiffs could be predicated, and hence, of course, no exceptions were taken to any refusals by the court to find such facts. However, we are disposed to pass over this question and examine the case on the merits to see if there was an error committed by the trial court.

This action was brought to recover damages sustained by the plaintiffs' sloop by a collision with the defendant's lighter in the East river. Both vessels were beating up the river with the wind dead ahead, and at the time of the collision both were on the starboard tack, the lighter being to the windward. The sloop entered the East river after the lighter, and not only sailed faster than the lighter, but also closer to the wind. The main point involved in this controversy is whether, at the time of the collision, the sloop is to be considered with reference to the lighter as an overtaking vessel or a crossing vessel. If an overtaking vessel then, under the twenty-second navigation rule, it was the duty of the sloop to have kept out of the way of the lighter. If the vessels are to be considered as crossing, then, both having the wind on the same side, the windward vessel, that is, the lighter, was bound, under the seventeenth rule, to keep out of the way of the sloop.

The contention of the plaintiffs as to the fact, is that there were three or four points difference between the courses of the two ves-

sels, and as to the law, is that such a difference makes the sloop a crossing vessel, instead of an overtaking vessel. As to the question of fact, here also the plaintiffs' case is defective. There seems to be nothing in the evidence fixing, with even approximate accuracy, the difference in the courses of the vessels. The seventh finding of fact is that the lighter could not lie within several points as near the wind as the sloop, but there is no finding determining the absolute courses of the vessels. But, if it be assumed that there was a difference of three points between the courses of the vessels, still we are of opinion that the sloop was an overtaking vessel, and not a crossing vessel, within the navigation rules.

Three cases are cited by the plaintiff to sustain the claim that such a divergence of course constitutes a crossing vessel. The first is the case of the *Clement* (1 Sprague, 257). In that case there was a difference of only two points between the courses of the vessels, and the vessel to windward was held in fault in not keeping out of the way of the leeward vessel. But this decision, which arose before the navigation rules, was based solely on the ground that the windward vessel had the wind free, and not with reference to the fact that the vessels were to be considered as crossing.

The second is the case of the *Cayuga* (14 Wallace, 270). In this case the difference between the courses of the vessels was over three points, and the case was held to be one of crossing vessels. The court held that the rule as to overtaking vessels did not apply; because, at the time precautions first became necessary, the distance between the vessels on a line at right angles to their courses was very great and the steamers nearly abreast.

The third is the case of the *Peckforton Castle* (2 Prob. Div., 222). Here, also, the question arose whether it was to be considered a case of a crossing or overtaking vessel. The Admiralty court found the divergence or difference of the courses to be four points, but based its decision on the ground that the windward vessel had the wind free, and should therefore have avoided the collision. On appeal (3 Prob. Div., 11), the court held that the difference of course was at least five points, and that the *Peckforton Castle* had never been seen from the colliding ship in any direction abaft her beam, and that, hence, it was strictly a case of crossing vessels, in which it was the duty of the windward vessel to avoid the other.

It will thus be seen that the cases cited (the last two of which only are in point), do not attempt to define what is a crossing vessel with regard solely to the difference of their courses. Nor can I find any case in which the difference of the courses is made the sole controlling element. In the case of the *Franconia* (2 Prob. Div., 12) the question, also, arose whether the case was to be considered one of crossing ships or of an overtaking ship. The court there say : " The rule as to crossing ships uses that term as a term of navigation, not as a mathematical term ; and so, when the rule speaks of one ship overtaking another, it is a sea and not a mathematical term." It then proceeds to hold that a vessel will be considered an overtaking vessel, if the hinder vessel is so far astern that it cannot see the side lights of the forward ship, even though their courses be not parallel. But, in all these cases the vessels were in comparatively broad waters, and not going in the same general direction. In the case of the *Cayuga*, the steamers were crossing the river from opposite sides. In the case of the *Peckforton Castle*, the vessels were at sea at the end of the English channel, one bound up the channel and the other down. The rules held applicable in those cases cannot fairly apply to the navigation of a narrow river or arm of the sea. In such a case, it seems to us, that in determining whether a vessel is overtaking or crossing, regard must be had to the general direction of the vessels, whether up or down the river, and not altogether to the courses on which they may be running at a particular moment. The narrow and tortuous channels of rivers in this country oftentimes compel a vessel to change its course frequently and in the shortest distances. If such change of course is to determine the application of the rules of navigation, it would follow that the rules controlling the movements of vessels would be continuously changing as the vessel navigates the river, which would produce great confusion. This, we think, should not be the construction of the rule ; but, if the vessels are going up the river, the one down the river should be considered an overtaking vessel, regardless of their courses. The plaintiff himself seems to have regarded the lighter as ahead of him, for he says in his testimony, " when we came around the Battery, we saw the lighter Billow ahead. * * * We stood close to the Brooklyn shore, and the lighter Billow was ahead of us a little way." The *Velocity* (L. R., 3 P. C., 44), and

the *Ranger* (L. R., 4 P. C., 519), are both authorities to the effect that, in a winding and crowded river like the Thames, a particular direction taken for a few moments, to round a corner or avoid an obstacle, is not such an indication of the real course of a ship as to make her case, with reference to another ship, that of a crossing vessel.

We are, therefore, of the opinion that as both vessels were beating up the river and on the same tack, the sloop is to be considered an overtaking vessel, within the rules of navigation, regardless of the difference of their courses, and that, hence, it was her duty to have avoided the lighter; and that the collision was due to her (the sloop's) fault.

Judgment should be affirmed, with costs.

PRATT, J., concurred.

DYKMAN, J. (dissenting):

This is a common law action for the recovery of the damage resulting from an injury to the vessel of the plaintiffs.

They were the owners of the sloop Commodore Jones, and the defendant was the owner of the lighter Billow. On the 22d day of October, 1884, about ten o'clock in the forenoon, these vessels were beating up the East river, with a strong flood tide, and a strong wind dead ahead. The sloop was loaded with brick and carrying full sail. The lighter was sailing with jib and mainsail with the peak clewed. She was slower than the sloop, and could not lay so near the wind as that vessel, within several points; and with her sails in that condition she would not readily luff, nor quickly go in stays.

Before the accident both vessels were sailing upon the starboard tack, the lighter having stood off from the Brooklyn side near Gold street, and the sloop having made her tack one block below. In the course of both vessels there was a steam tug towing four schooners, two on each side, and bound up the river also. After the lighter had gone about and was full, she starboarded her helm so as to pay off and avoid the flotilla by going to its stern. The sloop forereached both the lighter and the tug, and had attained a point on the starboard quarter of the starboard schooner, and lapped up so far that she could not keep off and pass astern of the tug and

schooner, and could not weather them on that tack. Thereupon, to avoid a collision with the schooner, the sloop put her helm hard down and attempted to go in stays and come about on a short tack to the Brooklyn shore.

At that time her captain called on the lighter, which was then just to the windward, to go about. The jib of the lighter was lowered, and her helm was put down, but she was not quick enough in the wind to enable the sloop to go about, and so she remained in stays, running alongside the sloop until the bow of the lighter struck her slantly on her starboard side, forward of her rigging, and inflicted the damage complained of.

These substantial and prevalent facts stand uncontradicted, and the trial judge rendered a judgement for the defendant on the theory that the sloop was the overtaking vessel and, therefore, bound to avoid the lighter, and contributed to the disaster because she failed so to do.

By the congressional rules of navigation still applicable to the East river when sail vessels are crossing, so as to involve risk of collision if they have the wind on the same side, the vessel to the windward shall keep out of the way of the vessel to the leeward. (Rule 17.)

That rule applies to these vessels when they were on the starboard tack and had the wind on the same side. The lighter was to the windward, and could not sail so close to the wind as the sloop within several points, and after she was headed off from the Brooklyn shore and was full she starboarded her helm and fell off several points more to port to run under the stern of the tug and schooner, while the sloop kept her course; so there were several points difference between the courses of the two vessels. They were pursuing converging and intersecting courses, and a collision was certain if they both continued and reached the point of intersection at the same time.

In the situation it was the duty of the lighter as the windward vessel, in obedience to Rule 17, to keep out of the way of the sloop, and by Rule 23 of the Code of Navigation, where one of two vessels shall keep out of the way, the other shall keep her course subject to the qualification of Rule 24, which is this: In construing and obeying these rules due regard must be had to all dangers

of navigation and to any special circumstances which may exist in any particular case, rendering a departure from them necessary in order to avoid immediate danger. Rule 22 of the same Code is invoked by the defendant for his justification. It is this : " Every vessel overtaking any other vessel shall keep out of the way of the last-mentioned vessel."

But the sloop was not an overtaking vessel in any sense, except that of being the fore-reaching vessel. The lighter was to the windward, pursuing a crossing course, and both had the wind from the same way, and she falls easily within the operation and requirements of Rule 17. That she was a crossing vessel is also shown by the diagrams of the vessels shown in the case, and by the fact that she was obliged to port her helm to avoid striking the sloop head on. The sloop kept her course, in obedience to Rule 23, in the expectation that the lighter would obey Rule 17 and keep out of her way, and both these rules justify her movements. There was no occasion for the application of Rule 24, for there existed no special circumstances rendering a departure from Rules 17 and 23 necessary. The two latter rules contain ample provision for all the emergencies which arose in this case. The sloop obeyed Rule 23 and kept on her course, and if the lighter had been handled in obedience to the requirements of Rule 17 the encounter would have been avoided. There was no complication of circumstances, and neither vessel was disabled or beyond control.

If the lighter would not luff quickly, yet the fact that she answered her helm when it was ported, and came up to the sloop obliquely, shows that she could have kept out of the way had she gone about in time, and she had abundant room and time to do so.

The case of the *Clement* (1 *Sprague*, 257), and of the *Cayuga* (14 Wall., 270), are authorities in favor of the plaintiff, and the case of the *Peckforton Castle* (3 Asp. Mer. Cas., [N. S.], 511) seems to be similar to this. In that case there were four points, between the courses of two sailing vessels, and they were held to be crossing, and the court said, " although the vessel which had the wind free was being overtaken by the faster ship, yet, as the faster ship was close hauled, and as both had the wind on the same side, the rule which governs this case is that which is contained in the twelfth article." That article was the same as our seventeenth rule.

We reach the conclusion, after a careful examination, that the lighter was in fault and the sloop was not, and that the plaintiffs are entitled to recover their damages.

The judgment should therefore be reversed, and a new trial granted, with costs to abide the event.

Judgment and order denying new trial affirmed, with costs.